Kenneth Gribetz, Appellant, v Herbert B. Evans, as Chief Administrative Judge of the Courts of the Unified Court System of the State of New York, et al., Respondents.

Second Department, December 9, 1985

## APPEARANCES OF COUNSEL

*Donald Tirschwell* for appellant.

*Michael Colodner (John Eiseman* and *Kenneth Falk* of counsel), for Herbert B. Evans and another, respondents; and *Robert Abrams, Attorney-General (Richard G. Liskov* and *Aven Rennie* of counsel), for State of New York, respondent. (One brief filed.)

## OPINION OF THE COURT

MOLLEN, P. J.

The primary issue presented by this appeal is whether Judiciary Law § 39 obligates the State of New York to fully reimburse the County of Rockland for all costs incurred by the county for security measures taken in connection with several criminal actions commonly and collectively referred to as the "Brink's case" and, if not, whether the statute's application denies plaintiff, a taxpayer of Rockland County, of his constitutional right to equal protection of the laws.

### I. FACTS

The instant appeal arises out of the well-publicized October 20, 1981 incident in which several members of a revolutionary terrorist group stole $1,600,000 from a Brink's Inc. armored truck outside a branch of the Nanuet National Bank in Rockland County. In the course of their flight from the scene, the terrorists shot and killed a Brink's Inc. security guard and two Rockland County police officers. Eight individuals were eventually arrested in connection with this incident and charged by a Rockland County Grand Jury indictment with a variety of crimes, including murder and robbery. During the course of the pretrial proceedings, this court ordered that the defendants' trial be moved from Rockland County to Orange County *(see, People v Boudin,* 90 AD2d 253). Thereafter, two of the named defendants in the Brink's case, Kathy Boudin and Samuel Brown, whose cases were severed from their codefendants' cases, were granted a further change in venue to

Westchester County in December 1983 *(see, People v Boudin,* 97 AD2d 84).

Throughout the legal proceedings which took place in Rockland County in connection with the Brink's case, the Rockland County Sheriff implemented extraordinary security measures to protect the general public and those individuals, such as Justices, jurors and court personnel, who were directly involved in the case, from possible terrorist retaliation. These measures included 24-hour patrols of the various courthouses, electronic screening of persons entering the courthouses, extra personnel to ensure the safe transport of the defendants between the jails and courtrooms, and round-the-clock protection for the Justice presiding over the case. The cost incurred in maintaining these security measures exceeded the county's budget for court security. Although the county received some additional reimbursement for the security costs from the Office of Court Administration (OCA) as well as other State agencies, total reimbursement for these extraordinary costs was not received.

## II. The Instant Proceeding

In June 1983, plaintiff, the District Attorney of Rockland County, acting in his role as a citizen taxpayer of the county, instituted the instant action for a declaratory judgment and injunctive relief. Joined as defendants were the then Chief Administrative Judge of the Courts of the Unified Court System of the State of New York, Herbert B. Evans,* OCA, and the State of New York. Plaintiff's first cause of action sought a declaration that, pursuant to Judiciary Law § 39, the defendants were obligated to totally reimburse Rockland County for the extraordinary security costs incurred in the Brink's case proceedings and that the defendants' failure to undertake that obligation constituted a misapplication of State funds.

In his second cause of action, plaintiff alleged that, assuming Judiciary Law § 39 does not mandate the requested reimbursement, the statute was unconstitutional as applied to Rockland County. This cause of action is premised upon allegations that other political subdivisions within the State

---

* *Judge Herbert B. Evans was replaced in August 1983 by Judge Robert J. Sise as the Chief Administrative Judge of the State. Thereafter, Judge Robert J. Sise was succeeded by Judge Joseph W. Bellacosa in January 1985.*

receive total reimbursement for the provision of local court security costs. Thus, plaintiff sought a declaration that he, as a taxpayer of Rockland County, and taxpayers of other political subdivisions similarly situated, are being deprived of their constitutional right to equal protection under the statutory scheme enacted by Judiciary Law § 39. In his third cause of action for injunctive relief, plaintiff sought an order directing the defendants to pay Rockland County for all the security costs incurred.

Issue was joined in July 1983 by service of a joint answer in which the defendants essentially denied the allegations raised in the complaint and asserted several affirmative defenses.

In October 1983, defendants jointly moved for summary judgment asserting that Judiciary Law § 39 does not contemplate nor mandate total reimbursement by the State to localities for their court security costs. In addition defendants asserted that their actions did not deprive plaintiff of his right of equal protection of the laws. In the absence of triable issues of fact, defendants urged that summary judgment in their favor was warranted. Plaintiff responded by a cross motion for change of venue, alleging that an affidavit submitted by Justice Joseph Gagliardi, Chief Administrative Judge of the Ninth Judicial District (which includes Rockland County) in support of defendants' summary judgment motion had created an appearance of impropriety.

By order and judgment (one paper), dated March 7, 1984, Special Term, *inter alia,* granted defendants' motion for summary judgment and denied plaintiff's cross motion as moot. We agree with Special Term's determination and accordingly affirm.

### III. JUDICIARY LAW § 39

Our analysis of plaintiff's cause of action for total reimbursement of the aforesaid court security costs pursuant to Judiciary Law § 39 begins with a review of the history of the legislative scheme for State funding of security costs in the courts of New York State.

Under Judiciary Law § 403, the Sheriff of each county, except New York, Bronx, Kings and Queens Counties, is mandated to provide as many constables or Deputy Sheriffs as the Sheriff deems necessary to appear and attend upon any term of the court within his county. Prior to 1977, in most instances, the expenses of providing court security services in

the local courts were borne solely by the respective localities. These services were provided primarily by Deputy Sheriffs or police officers employed by the locality. In 1977, the responsibility for allocating the costs of operating the various State courts was assumed by the State under the Unified Court Budget Act, codified as Judiciary Law § 39 (L 1976, ch 966). The legislative findings which accompanied the passage of said act explained;

"It is both uneconomical and inefficient to have the responsibility of funding this state-operated court system divided among various units of local government. This divided funding blurs responsibility and accountability for an effective court system and makes the operation of each of the state courts dependent upon varying fiscal capabilities of individual local governments.

"Placing at the state level the ultimate fiscal responsibility for the courts of the unified court system enumerated in this act will significantly enhance their effective operation by enabling one legislative body to make decisions concerning the amount of moneys to be appropriated based upon a comprehensive view of the relative needs of the various courts" (L 1976, ch 966, § 1).

Under Judiciary Law § 39 (3) (former b), localities were entitled to reimbursement from the State for costs of security services not to exceed 75% of the amounts specified in column B under former paragraph (a) of subdivision (2) of that section. Thus, Judiciary Law § 39 (3) (former b) provided in relevant part: "Political subdivisions which provide security services for the courts, the cost of which is not included in that portion of the budget of the political subdivision used in the computation of the amounts set forth in column A in paragraph (a) of subdivision two of this section shall for the fiscal year commencing April first, nineteen hundred seventy-nine be entitled to reimbursement by the state for their actual expenditures provided, however, that such reimbursement to each political subdivision shall not exceed seventy-five percent of the amount set forth in column B in paragraph (a) of subdivision two of this section".

Notably under this statutory framework, the Legislature provided for substantial, but not total, reimbursement for local security costs, leaving to the localities the obligation to pay for the remaining expenses. It is also significant to note that the Deputy Sheriffs and police officers providing these

security services remained employees of the localities with certain exceptions *(see,* Judiciary Law former § 39 [3] [c]).

Following the enactment of the Unified Court Budget Act, reimbursement of court security costs was made by the State to the various localities based upon the fixed amounts specified in column B of Judiciary Law § 39 (2) (former a). It soon became evident, however, that the monetary amounts set forth in that subdivision, which were calculated upon 1976 costs, were inadequate since, among other reasons, the figures did not take into consideration increases provided for in local collective bargaining agreements for court security personnel. In order to rectify this disparity, the Legislature appropriated an additional $2.2 million to the judiciary budget for fiscal year 1982-1983 to phase in the conversion of column B security amounts to 1982-1983 dollar equivalents. This increased appropriation did not, however, provide for nor contemplate full reimbursement to the localities for all court security costs.

In 1983, Judiciary Law § 39 was amended, effective June 6, 1983, at the request of OCA, to eliminate the fixed column B amounts in former paragraph (a) of subdivision (2) of that section and former paragraph (b) of subdivision (3) of the section was amended to provide, *inter alia:* "Political subdivisions which provide security services for the courts * * * *shall be entitled to reimbursement by the state within the amounts appropriated to the administrative office for the courts for that purpose"* (L 1983, ch 236, § 2; emphasis added).

The accompanying legislative memorandum submitted by OCA in support of the amendment to Judiciary Law § 39, states, *inter alia,* "the purpose of this measure is to repeal the now obsolete and confusing provisions of the Unified Court Budget Act purporting to set limits on the amount of funding available for security services. This measure would take effect immediately and would have no impact on the State Budget". Similarly, the analysis of the proposed legislation prepared by the Senate Finance Committee Minority, states, in relevant part:

*"Analysis * * *

*"This bill makes appropriate technical changes to section 39,* removing column B funding restrictions which are no longer applicable * * *

*"Statement in Support:*

"This bill would clarify provisions of the Judiciary Law

which would have been circumvented by the budgetary process * * *

"*Fiscal Implications:*

"None" (emphasis added).

According to the affidavit of former Chief Administrative Judge Sise which was submitted in support of defendants' summary judgment motion, the general budgetary process under this new legislative scheme with regard to finding local security services provided by political subdivision employees is initiated by the submission of estimates of projected court security costs in advance of each fiscal year by the Administrative Judge of each judicial district. These budget estimates are based on the normal level of security personnel it is anticipated will be necessary to maintain adequate court security in each location under normal circumstances. Upon receipt of these budget estimates, OCA makes such modifications as it may deem appropriate before presenting the final security package proposal to the Legislature as part of the judiciary budget.

Former Chief Administrative Judge Sise explained that there is some flexibility built into this funding process within each judicial district in that it permits the transfer, if possible, of unused or excess allocated funds of one locality to another locality whose budgeted amount falls short of its needs. In fact, under this scheme, Rockland County received the sum of $32,000 in additional security funds for the fiscal year 1982-1983 due to Westchester County's underutilization of its allocation for that period. It is significant to note, however, that the budgetary appropriation process does not, as a general rule, budget for extraordinary court security expenses.

In view of the above, it is clear that, contrary to plaintiff's position, the 1983 amendment to Judiciary Law § 39 did not create a mandate for full reimbursement to localities for security costs. The amendment merely constituted a "technical" change in the means by which reimbursement is achieved. Under Judiciary Law current § 39, reimbursement for court security costs is subject to the standard budgetary appropriation process, to be increased or decreased by available funds. In fact, the concept of limited reimbursement of these costs is specifically set forth in the statute which states, *inter alia,* "[p]olitical subdivisions * * * shall be entitled to reimbursement by the state *within the amounts appropriated*"

(Judiciary Law § 39 [3] [b]; emphasis added). Thus, plaintiff's argument that the statute should be construed to require full reimbursement must fail since such an interpretation would conflict with the plain and unambiguous terms of the statute as well as the expressed intent of the Legislature *(see, Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.,* 45 NY2d 471, 480).

Accordingly, given the absence of statutory or legal authorization for Rockland County to receive State funds to totally reimburse the county for the extraordinary security costs incurred in the Brink's case, plaintiff's cause of action for such relief cannot be sustained *(see, Stetler v McFarlane,* 230 NY 400; *Hess v Board of Educ.,* 41 AD2d 151).

## IV. EQUAL PROTECTION CLAIMS

In certain designated counties within New York City, as well as in Nassau, Suffolk and Westchester Counties, court officers employed by New York State fulfill the necessary court security functions *(see,* Judiciary Law §§ 168, 39 [6], [10]) whereas court security costs in Rockland and similarly situated counties are paid, at least in part, with funds appropriated to OCA by the Legislature to meet their statutory obligation to provide court security. Plaintiff assumes, without apparent basis, that the statutory provisions governing the courts in those designated New York City counties, as well as Nassau, Suffolk and Westchester Counties, result in total financial coverage of the normal and extraordinary security costs in those designated areas. Based on this premise, plaintiff argues that application of Judiciary Law § 39 (3) (b) in this case violates his right to equal protection as a taxpayer of Rockland County by discriminating against the county without a rational basis for such disparate treatment. We disagree.

It is widely recognized in matters concerning the allocation of public funds, that the courts are not empowered to review the Legislature's wisdom or the propriety of its decision *(see, Board of Educ. v Nyquist,* 57 NY2d 27, 38-39, *appeal dismissed* 459 US 1138; *Birkeland v State of New York,* 98 AD2d 395, *affd* 64 NY2d 663). The Court of Appeals in *Matter of Tolub v Evans* (58 NY2d 1, 8, *appeal dismissed* 460 US 1076) explained further:

"Rather, the scope of review is to determine whether a rational basis exists for the classification enacted by the Legislature. Particularly in matters concerning the State's

budget, equal protection does not require that all classifications be made with mathematical precision. *(Dandridge v Williams,* 397 US 471, reh den 398 US 914; *Lindsley v Natural Carbonic Gas Co.,* 220 US 61; *Board of Educ. v Nyquist, supra; Walsh v Commonwealth of Mass.,* 618 F2d 156; *Bruce v Scearce,* 390 F Supp 297, affd 521 F2d 796; *Eielson v Parker,* 179 Conn 552; *Employees Retirement System of Ala. v Oden,* 369 So 2d 4 [Ala].)* * *

"Similarly, a statutory scheme will not be struck as violative of equal protection merely because it creates differences in geographic areas. *(McGowan v Maryland,* 366 US 420, 427; *Salsburg v Maryland,* 346 US 545; *Walsh v Commonwealth of Mass., supra,* at p 158; *Matter of Colt Inds. v Finance Administrator of City of N. Y.,* 54 NY2d 533, 544.) As long as the State had a rational basis for making such a distinction, it will pass constitutional muster under an equal protection challenge".

In this case, the Legislature clearly had a rational basis for deciding that the State would assume total responsibility for court security needs and expenses in the metropolitan New York area, whereas, in the rest of the State, the security needs of the courts would continue to be provided by locally paid Deputy Sheriffs or police officers subject to State reimbursement. The rationale for the legislative scheme at issue is apparent from a perusal of the Staffing Guidelines of the Unified Court System dated November 28, 1979 and the recommended security ratios contained therein. While counties with one to three Judges may require only one full-time security position, New York City Criminal Trial Parts alone require four positions each and additional security staff is required for arraignment parts, courthouse hallways and during the use of magnetometers in the courthouse. The guidelines explain that "[t]he basic ratios for security are the highest in the City of New York and the largest counties outside, with decreasing ratios for the smaller localities" and that "[t]his reflects both the larger number of people that are in and around court facilities and the higher proportion of serious incidents in these courts". The guidelines further state that "the courts within New York City are of sufficient size to warrant their own security forces, while security resources for the remaining localities can be shifted among the courts, to reflect the changing configuration between civil, criminal and family proceedings".

It is thus apparent that those officials responsible for court

administration in the State perceive a difference in the security needs of the courts in the downstate urban counties and the lesser needs of other less populated counties. The conversion of local court security personnel in the designated New York City counties and Nassau, Suffolk and Westchester Counties to State employees reflects a judgment by the Legislature that the nature and volume of cases and the potential for serious incidents involving litigants, criminal defendants and the public in those counties justifies a permanent security force to protect court participants and spectators. Smaller suburban or rural counties, such as Rockland County, do not encounter the volume of cases nor the seriousness of incidents to warrant a permanent security force and local Deputy Sheriffs are presumed to be able to handle the daily security needs of those courts.

Thus, in this case, the Legislature's decision to differentiate between the large downstate urban counties and the other counties in the State in its statutory scheme for funding the respective court security needs of the Unified Court System is supported by a rational basis. Moreover, plaintiff's assertion that this legislative scheme results in 100% coverage of the normal and extraordinary security costs in the courts of New York City and the other three downstate counties is belied by the record before us. For example, former Chief Administrative Judge Sise noted in his supporting affidavit that New York City provides "supporting security services to the courts *at City expense*" (emphasis added) through the use of New York City Police Department and Correction Department personnel for detention and escort of prisoners and security outside of the courthouses. Furthermore, it is by no means clear that additional State-employee court officers would automatically be hired or transferred to meet all the extraordinary needs of a particular case such as the Brink's case if it occurred in the designated New York City Counties or Nassau, Suffolk or Westchester Counties. Rather, locally funded security personnel such as city Marshals, local police or Deputy Sheriffs may be utilized as needed in such circumstances. In fact, former Chief Administrative Judge Sise stated that "[t]he budget process for security needs does not provide for the extraordinary security expenses of *any* county" (emphasis added).

In view of the aforesaid, the budgetary scheme in question is supported by a rational basis and thus does not violate

plaintiff's constitutional right to equal protection of the laws *(Matter of Tolub v Evans,* 58 NY2d 1, *supra).*

## V. Conclusion

Having determined that Judiciary Law § 39 does not mandate total reimbursement to Rockland County by the State for court security costs incurred in the Brink's case and that the statute does not violate plaintiff's right to equal protection of the laws, we conclude that summary judgment was properly granted in favor of the defendants. The issues raised herein are purely legal in nature and present a particularly appropriate opportunity for judicial resolution by summary judgment. The essential facts are not in dispute and plaintiff has failed to raise any issues of fact requiring a trial. Therefore, the entry of summary judgment in favor of defendants should be affirmed.

Mangano, O'Connor and Weinstein, JJ., concur.

Order and judgment (one paper) of the Supreme Court, Rockland County, dated March 7, 1984, affirmed, without costs or disbursements.