OPINION OF THE COURT
Robert G. Seewald, J.
On February 26, 1999, the law firm representing one of the police officers allegedly involved in the shooting death of Amadou Diallo obtained an order issued by this court, which impaneled the subject Grand Jury, directing the People to show cause (on Mar. 2nd) why the Grand Jury investigation of this matter should not be delayed and, in any event, that the Grand Jury panel be moved to an undisclosed location, away from the Bronx Criminal Court Building, where all grand jurors usually sit during their term. Defense counsel’s predicate for the relief sought is the extensive publicity generated by this tragic incident, as well as the numerous demonstrations that have taken place in the intervening period of time.[1]
On the return date of the motion, March 2nd, the People presented their affirmation in opposition. In essence, the People argue that there is no legal basis to justify the relief sought. Nor do the People concede the accuracy of the movant’s factual recitation outlined in his papers.
After hearing oral argument from both sides (also on Mar. 2nd), this court, noting that “[c]ourts are especially reluctant to take any action that will interfere with ongoing grand jury proceedings” (1 Beale, Bryson, Felman and Elston, Grand Jury Law and Practice § 3:21, at 3-105 [2d ed]), refused to stay or move the situs of the present Grand Jury investigation. However, the court, mindful “that an accused individual has a constitutional right to have his case presented before a fair and impartial Grand Jury [citations omitted]” (People v Hill, 67 AD2d 427, 431, appeal dismissed 50 NY2d 894, mot to vacate denied 55 NY2d 800, mot for reconsideration denied 55 NY2d 975), and guided by the more stringent rules applicable to the discharge of sworn petit jurors (see, CPL 270.35; People v Johnson, 87 NY2d 1006, citing People v Buford, 69 NY2d 290, 299), informed the respective parties that it would promptly conduct an in camera inquiry of the Grand Jury panel to *225 explore and resolve the impact, if any, of the publicity engendered by this incident on the grand jurors’ ability to fairly and impartially consider the evidence in this case.[2]
At this point, it must be noted that the court is mandated to undertake this inquiry, inasmuch as our own Court of Appeals has observed that “ [i] t is * * * beyond dispute that improper influences and exposure to bias can so undermine the Grand Jury’s integrity as to require dismissal of the resulting indictment [citations omitted]” (People v Adessa, 89 NY2d 677, 682).
The law in regard to a petit jury is well established. There is no need for “a prospective juror [to] be totally ignorant of the facts and issues involved [citation omitted]. Similarly, an awareness of newspaper accounts of the crime and the accused does not render a juror ineligible to serve where [he or] she has indicated [his or] her ability to render an impartial verdict [citation omitted]” (People v Bosket, 168 AD2d 833, 834, lv denied 77 NY2d 904). Thus, "[w]here a court determines, after reasonable inquiry, that a juror will cast aside any preconceived notion, impression, or opinion as to the guilt or innocence of an accused and render a verdict based solely upon the evidence presented at trial, that juror may be considered impartial and fit for service [citations omitted]” (People v Velez, 222 AD2d 539, 540, lv denied 87 NY2d 978; see also, People v Jones, 160 AD2d 613 [1st Dept], lv denied 76 NY2d 790 [Court refused to disqualify a juror who had viewed a television account of a highly publicized shooting case — a police officer was shot— following a probing and tactful inquiry]; People v Sullivan, 167 AD2d 564, lv denied 77 NY2d 882).
These appellate cases, while perhaps not controlling at the Grand Jury stage (see, People v Hussein, 150 Misc 2d 119, 120 [“precedents mandating close examination of trial jurors rarely, if ever, apply to grand jurors”]), are still nonetheless certainly instructive and useful to resolving the instant controversy, because, as noted above, “ ‘improper influences and exposure to bias can so undermine the Grand Jury’s integrity as to require dismissal of the resulting indictment’ [citation omitted]” (People v Tomaino, 248 AD2d 944, 947).
In any event, the precise question presented for determination, namely, whether the widespread publicity and public outcry generated by this case have effectively compromised the *226 integrity of the Grand Jury,[3] is no longer a matter of sheer conjecture. More particularly, after an in-depth inquiry (on a sealed record) by this court, the Grand Jury panel, without a single dissenting voice, unequivocally indicated that it could continue to exercise its solemn responsibility to fairly, impartially and objectively hear and decide the present matter free of outside “influences”.[4] Significantly, the grand jurors further revealed that they did not have any preconceived ideas or beliefs about the facts of the case or as to what results should ensue. The court also ascertained that the Grand Jury has not been influenced by any outside pressures from any direction whatsoever, i.e., via print media, radio, television or public demonstrations. In this regard, the Grand Jury solemnly pledged to ascertain the facts and to render justice fairly and evenhandedly in accordance with the law, while giving each witness, whether civilian or police officer, fair consideration.
Lastly, when asked if they could continue to deliberate fairly and honestly in this courthouse — as opposed to hearing this case elsewhere and being insulated from any outside pressures or demonstrations — the Grand Jury emphatically answered in the affirmative.
 Consequently, in view of the grand jurors’ answers to the court’s queries,[5] it is readily apparent that there is absolutely no sound basis in the record to stay the proceedings or to move the Grand Jury to an undisclosed location (see, People v Velasquez, 167 AD2d 364, 365, lv denied 77 NY2d 883 *227 [reversible error to discharge sworn petit juror “based on speculation as to her possible partiality despite her unequivocal statements to the contrary”]; People v Murrell, 150 AD2d 731, 732, lv denied 74 NY2d 815, error coram nobis denied 211 AD2d 688, habeas corpus denied sub nom. Murrell v Artuz, 1996 WL 629572 [ED NY, Oct. 15, 1996, Nickerson, J.] [a finding of “ ‘grossly unqualified to serve’ * * * which is derived from a ‘probing and tactful inquiry with the juror’ cannot be founded on the ‘unequivocal assurance from the juror that he or she will decide the case solely on the evidence and free from any effect of * * * bias’ ”]; People v Sanchez, 216 AD2d 207, 209 [1st Dept]). Thus, to rule otherwise, under these circumstances, would clearly constitute an unwarranted judicial intrusion upon the Grand Jury process.
Surely, as noted by the Second Circuit Court of Appeals, “[w]hen a person is brought before the grand jury and charged with a criminal offense, that individual is constitutionally entitled to have his case considered by an impartial and unbiased grand jury. [Citations omitted.] The grand jury need not deliberate in a sterile chamber, however, to satisfy this constitutional guarantee [citations omitted]” (United States v Burke, 700 F2d 70, 82, cert denied 464 US 816).
Accordingly, the applications by the respective police officers are denied.

. Attorneys for two of the other three police officers allegedly involved in this incident have since joined in the application.

. The court subsequently undertook such inquiry during the afternoon of March 2nd, the return date of the order to show cause.

. “The federal courts have generally concluded that a defendant challenging an indictment on the ground of pretrial publicity must bear the heavy burden of establishing that the publicity caused actual bias and prejudice on the grand jury, and that the indictment was the result of a fundamentally unfair proceeding” (1 Beale, Bryson, Felman and Elston, Grand Jury Law and Practice § 3:21, at 3-103 [2d ed]). The commentators conclude that “[flew, if any, defendants will be able to carry this burden [footnote omitted]” (id., at 3-103 — 3-104).

. The court’s inquiry was directed en masse to the Grand Jury panel, since “individual inquiry is not the only procedure to follow for assessing claims of improper jury influence. In fact, the Court of Appeals has not fashioned any concrete test for assessing claims of improper jury influence [citation omitted]” (People v Velez, 222 AD2d, at 540, supra; see also, People v Bennett, 219 AD2d 570 [1st Dept], lv denied 87 NY2d 844). However, the court did advise the panel that any individual grand juror who had any reservations would then be permitted to speak privately with the court.

. By its actions, this court has certainly not sought to convey the impression that judicial inquiry of the nature taken here in the midst of a Grand Jury presentation is to be routinely undertaken upon mere request. Quite the contrary, such an examination is to be exercised most cautiously, reserved for use in those rare and extraordinary cases like the matter at bar.