[701 NYS2d 342]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v KENNETH
BOSS, SEAN CARROLL, EDWARD MCMELLON and RICHARD
MURPHY, Defendants.

First Department, December 16, 1999

## APPEARANCES OF COUNSEL

No appearances for plaintiffs or defendants.

## OPINION OF THE COURT

Per Curiam.

The bedrock principle of our justice system is a defendant's right to be presumed innocent until found guilty at a fair and impartial trial. A pretrial change of venue for the purpose of protecting the right to a fair trial is an extraordinary remedy

reserved for the rarest of cases. The case of the four police officers accused of murdering Amadou Diallo is that rare case.

Defendants were indicted for murder in the second degree and reckless endangerment in the first degree for the February 4, 1999 death of Amadou Diallo. The trial of this indictment is currently scheduled to begin early in January 2000 in Supreme Court, Bronx County. In papers filed November 9, 1999, defendants move this Court for removal of the criminal action from Bronx County to Westchester County, or, in the alternative, to another county outside the City of New York. The prosecution opposes the motion and cross-moves to dismiss the motion as untimely.

CPL 230.20 (2) provides in relevant part that:

"At any time within the period provided by section 255.20, the appellate division of the department embracing the county in which the superior court is located may, upon motion of either the defendant or the people demonstrating reasonable cause to believe that a fair and impartial trial cannot be had in such county, order * * *

"that the indictment and action be removed from such superior court to a designated superior court of or located in another county."

As a threshold matter, the prosecution argues that defendants' motion is untimely because it was not brought within 45 days after defendants' March 31, 1999 arraignment (see, CPL 255.20 [1]). Although defendants' requests for additional time to file the motion should have been addressed to this Court and not to Supreme Court, Bronx County, we conclude, pursuant to CPL 255.20 (3), that this Court should entertain the motion. Specifically, defendants' motion relies in large part upon a recently completed public opinion survey. Such a poll conducted close in time to the projected trial date is more probative, under the circumstances, than a poll conducted near the inception of the case, because it is important to determine whether in the course of time passions have cooled (Groppi v Wisconsin, 400 US 505, 510; see also, People v Boudin, 90 AD2d 253, 257).

We now turn to the merits. A criminal defendant has the right to a fair trial, and a trial that is not dominated by a "wave of public passion" (Irvin v Dowd, 366 US 717, 728), that is not overwhelmed by press coverage (Murphy v Florida, 421 US 794, 798), and that is not conducted in a "carnival atmosphere" (Sheppard v Maxwell, 384 US 333, 358). Removal

of an action pursuant to CPL 230.20 (2), or "change of venue" is a means of preventing this type of unfairness.

This does not mean that any defendant who is charged with a highly publicized crime that has inflamed public passions is entitled to a change of venue, particularly where there has not yet been an attempt to select an impartial jury. "Evidence of widespread publicity, even when supported by the results of surveys of the attitudes of potential jurors, is generally regarded as nothing more than some proof that a fair trial may be impossible in the locality in which the crime occurred." (*People v Boudin*, 90 AD2d 253, 255, *supra*.)

■ We conclude that this case has been deluged by a tidal wave of prejudicial publicity to such an extent that even an attempt to select an unbiased jury would be fruitless. The prospective jurors of Bronx County, and the rest of New York City, have been subjected to an endless repetition of the notion that the two undisputed facts, namely that 41 shots were fired and that Mr. Diallo was unarmed, conclusively establish defendants' guilt and are dispositive of all possible factual and legal issues. This idea has been repeatedly stated in the form of quotations from prominent persons, or as editorial comment by publications and their columnists. This opinion as to defendants' guilt is routinely accompanied by assertions that defendants were motivated by racial prejudice. The few voices reminding the pool of prospective jurors of the sacrosanct right of an accused to the presumption of innocence have been drowned out by this incessant drumbeat of prejudicial publicity.

The following three examples provide an indication of the tenor of the publicity. On February 12, 1999, a column in the New York Post entitled "The Diallo Case: Bring in the Feds; How Could Something So Horrible Happen to Such a Decent Man" featured the word "Bang" repeated 41 times to represent the shots fired by defendants. On March 8, 1999, the cover of The New Yorker magazine consisted of a cartoon of a smiling police officer shooting at human cutout figures in a shooting gallery advertising "41 shots 10 cents." Finally, the record before this Court reflects that on November 28, 1999, the American Civil Liberties Union (ACLU) inserted the following full-page advertisement in the New York Times showing 41 bullet holes as the Police Department's method of informing a suspect of his "right to remain silent":

On February 4th, 1999, the NYPD gave Amadou Diallo the right to remain silent. And they did it without ever saying a word. Firing 41 bullets in 8 seconds, the police killed an unarmed, innocent man. Also wounded that night was the constitutional right of every American to due process of law. Help us defend your rights. Support the ACLU. www.aclu.org american civil liberties union

The ACLU advertisement is particularly noteworthy for two reasons. First, it is of very recent vintage. Second, it demonstrates that a long-established organization formed for, among other reasons, the protection of the rights of the accused, has publicly prejudged the guilt of these defendants.

This Court does not question the First Amendment right of the ACLU, the press, or anyone else, to express or publish an opinion, on the issues of this or any other case. We also recognize that the dichotomy between free press and fair trial is not resolved by imposing restraints upon the press, but rather by taking effective measures to protect the integrity of the legal process and preserve the right of any accused individual to a fair trial (*see, Sheppard v Maxwell*, 384 US 333, 362, *supra*).

In support of this motion, defendants offer evidence of the effects of the publicity in the form of public opinion surveys. A survey was recently conducted on defendants' behalf by the firm of Mitofsky International. Among other things, the results of this poll of Bronx residents found that 81% said there was no possible justification for the 41 shots fired (obviously a pivotal legal issue at trial), and 41% said the police were guilty of shooting Mr. Diallo knowing he was unarmed. These figures are corroborated by two neutral polls. In a Quinnipiac College poll summarized in the record, 67% of New York City residents polled, and 81% of Bronx residents polled, stated that there was "no excuse" for the shooting of Mr. Diallo. In a New York Times poll cited in a Times article of March 16, 1999, contained in the record, 74% of City residents polled stated that, based on their current knowledge of this case, there was "absolutely no excuse" for the way the police acted. While it may be that a jury hearing the evidence in this case will determine that the shooting was, in fact, unjustified, these poll results indicate that most potential jurors have already made that determination well in advance of trial. Significantly, the prosecution failed to submit any polling data casting doubt on the accuracy of the poll results.

To meet their burden of showing exceptional circumstances warranting a pretrial change of venue, defendants have provided other evidence that we find more compelling than publicity and polls. What is unique about this case is the scale and intensity of the public clamor that preceded the indictments, which, we can only conclude, would be repeated at trial. At the inception of this case there were weeks of mass demonstrations at police headquarters, the Bronx County Courthouse, and elsewhere. Thousands participated daily, and over one thousand persons, including high-ranking present and former public officials and other prominent persons, were arrested for acts of civil disobedience.

Based upon the totality of the evidence we find that this case cannot be tried in Bronx County, or anywhere else in the City of New York, without an atmosphere in which jurors would be under enormous pressure to reach the verdict demanded by public opinion. We are also convinced that this is the rare case where a motion for a change of venue should be granted prior to trial, rather than deferred pending an attempt to select an impartial jury. In our view such an attempt would be a "futile process" (*People v Culhane*, 33 NY2d 90, 110, n 4). As the Second Department observed in the Rockland County Brinks

robbery case (*People v Boudin*, 90 AD2d 253, 256, *supra*): "It is true that voir dire is generally the most effective means for determining whether a fair and impartial jury can be impaneled. Nevertheless, it may not always successfully root out prejudice and therefore does not always guarantee the right to a fair trial (see *Groppi v Wisconsin*, 400 US 505, 510). No matter how solemnly given, a juror's statement that he has not been influenced by prejudicial publicity and is capable of affording the defendant a fair trial is not necessarily dispositive (see, e.g., *Marshall v United States,* 360 US 310, 312, cf. *Irvin v Dowd,* 366 US 717, 722-723)."

The subject of potential pressure upon jurors would be particularly difficult to deal with in voir dire. This is not a simple matter of asking the jurors if they could put aside any opinions they may have formed. Instead, it would also be necessary to ascertain whether they could resist a public cry for conviction, and, specifically, whether they could face their friends and neighbors in the event of an acquittal. The very asking of such questions carries the danger of implanting or reinforcing in the jurors' minds the fear of the consequences of reaching an unpopular verdict.

The prosecution points to an unsuccessful application by defendants made to the Supervising Justice of the Grand Jury (Robert Seewald, J.) for an order delaying the Grand Jury proceedings and moving them to a location less affected by demonstrations. The court (*Matter of Grand Jury Investigation of Death of Diallo,* 180 Misc 2d 223) questioned the grand jurors and determined that they were not influenced by the publicity and demonstrations. The available evidence makes it apparent that the prospective trial jurors cannot be expected to be as impervious to influence. The potential pressures upon jurors who serve in a public trial are hardly comparable to the pressures upon grand jurors, who participate in a secret proceeding.

We do not diminish the tragedy of Mr. Diallo's death by insisting that criminal liability for his death must be determined through a fair and impartial trial. A trial in which the jurors have been persuaded in advance, by outside influences, that they have a duty to reach a certain verdict is not a trial; it is no different from the staged proceedings of totalitarian societies where there is the illusion of a fair trial but the predetermined outcome follows a script.

 The issue that remains is selection of a new venue. This is a matter of grave importance for which there is little guid-

ance. Defendants propose Westchester County, which adjoins Bronx County and carries the advantage of convenience. However, "within reasonable limits, the community to which the trial is transferred should reflect the character of the county where the crime was committed" (*People v Goldswer*, 39 NY2d 656, 663). A change of venue should, of course, not afford defendants an unfair demographic advantage (Note, 106 Harv L Rev 705 [1993]).

Accordingly, this case should be removed to àn urban county rather than a suburban or rural county. Counties where substantial numbers of New York City law enforcement officers reside are particularly undesirable. We have examined data published by the United States Bureau of the Census which reveal that several counties containing urban areas, namely Albany, Erie, Monroe, and Onondaga, have populations featuring a reasonable degree of ethnic diversity. Since the demographics of each of these counties are approximately the same, we have chosen, as the place of trial, Albany County, which is geographically closest to Bronx County.

Therefore, defendants' motion for removal of the indictment and action to a superior court of another county should be granted to the extent of removing the indictment and action from Supreme Court, Bronx County, to Supreme Court, Albany County, and the prosecution's cross motion should be denied.

LERNER, J. P., ANDRIAS, SAXE, BUCKLEY and FRIEDMAN, JJ., concur.

Motion for removal of indictment and action to a superior court of another county granted to the extent of removing same from Supreme Court, Bronx County, to Supreme Court, Albany County, and cross motion for dismissal of motion denied.