[706 NYS2d 527]

In the Matter of DAILY NEWS, L.P., et al., Petitioners, v JOSEPH
C. TERESI, as Justice of the Supreme Court, Albany County,
et al., Respondents.

Third Department, May 4, 2000

## APPEARANCES OF COUNSEL

*McNamee, Lochner, Titus & Williams, P. C.,* Albany (*Michael J. Grygiel* of counsel), and *The Daily News, L.P.,* and *Clifford, Chance, Rogers & Wells,* New York City, for petitioners.

*Worth, Longworth, Bamundo & London,* New York City (*Peter D. Coddington* of counsel), for Edward McMellon, respondent.

## OPINION OF THE COURT

Mercure, J.

In December 1999, the Appellate Division, First Department, ordered a change of venue from Supreme Court, Bronx County to Supreme Court, Albany County in the criminal action against four New York City Police Officers, respondents Kenneth Boss, Sean Carroll, Edward McMellon and Richard Murphy (hereinafter collectively referred to as defendants), arising out of the death of Amadou Diallo (*see, People v Boss,* 261 AD2d 1). The action was assigned to respondent Joseph C. Teresi (hereinafter respondent).

On December 29, 1999, respondent held a pretrial conference in chambers attended by defendants' attorneys and representatives of the Bronx County District Attorney. The conference consisted of a "get acquainted session" followed by a discussion of procedure concerning motions and jury selection. The latter portion of the conference was transcribed. The press was apparently unaware of the conference until a reporter for petitioner Daily News, L.P. learned of the ongoing conference and requested to be present. The defense attorneys objected on the ground that the conference was nearly at an end, and the conference continued without the reporter's presence. The transcript of the transcribed portion of the conference was released to the press the next day.

Following the change of venue, there remained two pretrial motions, one involving *Brady* material and the other concerning *Sandoval* issues, which respondent allowed the parties to

file under seal because of the confidential material involved. On or about January 6, 2000, the Daily News moved for permission to intervene in the criminal action, requested that the sealed documents be unsealed and requested that the press be allowed to attend all future pretrial conferences. Defendants opposed the motion as it related to some of the sealed documents. The People agreed with petitioners that the papers on the *Sandoval* motion should be unsealed, but did not address the *Brady* material. By decision and order dated January 19, 2000, respondent concluded that the issue of unsealing documents would be determined upon resolution of the two pending motions and that, while all proceedings are presumptively open, the rights of defendants to a fair trial would be considered in determining whether to limit access in the future.

On the *Brady* motion, respondent concluded that an ex parte memorandum describing defendants' theory of the case and their potential defenses should remain sealed to prevent disclosure to the prosecution of information crucial to the defense. Respondent also determined that 33 tape recordings with transcripts and reports concerning police interviews with various witnesses submitted by the prosecution for in camera review should remain sealed to avoid the tainting of the jury pool. On the *Sandoval* motion, respondent concluded that disclosure of evidence that was determined to be inadmissible unless defendants opened the door for its admission would jeopardize defendants' right to a fair trial by the very nature of the information that was under consideration. As a result of respondent's rulings, all documents involved in the *Brady* and *Sandoval* motions remained sealed.

The Daily News, six other news organizations and three reporters thereafter commenced this CPLR article 78 proceeding to prohibit respondent from enforcing the orders sealing the documents and from conducting any closed pretrial proceedings in the criminal action without providing advance public notice and an opportunity to be heard on the closure issue. Through the Attorney General, respondent advised this Court that he does not intend to appear in the proceeding. Defendants answered and filed a joint brief. During the pendency of the proceeding, the underlying criminal action was tried to conclusion and a verdict of not guilty was rendered on every count of the indictment against defendants.

We thereafter requested further submissions from the parties regarding the effect, if any, of defendants' acquittal on this proceeding. In response, defendants express the position that

the proceeding has been rendered moot with regard to the *Brady* motion and the motion under CPL 240.43, but join in petitioner's request for release of "33 tapes, transcripts and related documents" that were not released to the media. The Daily News asserts its continued entitlement "to relief that: (1) corrects the errors of law in Respondent's Decisions and Orders by stating the scope of the public's rights of access to pretrial proceedings and motions; and (2) grants access to the improperly sealed pretrial record materials." Finally, we are advised that in a posttrial order respondent has exempted the entire trial record, the exhibit list and the videotapes of the trial from sealing under CPL 160.50.

On the *Sandoval* application, the People submitted evidence of three prior on-duty shooting incidents involving three of the defendants. Although conceding that the incidents did not fall within the ambit of CPL 240.43 as "uncharged criminal, vicious or immoral conduct," the People presented them as "personal experience which, depending on the testimony, may constitute relevant evidence bearing on the defendants' perceptions, motivations, beliefs or actions in this case, their training or the reasonableness of their present conduct." Weighing the probative value of the incidents against their prejudicial impact, respondent concluded that they were collateral and irrelevant to the People's case and that their introduction into evidence would prejudice defendants. Evidence of the incidents was, therefore, ruled inadmissible unless defendants themselves opened the door to their admission. Further, taking into account the intense media scrutiny of the case, the enormous amount of pretrial publicity that had already occurred and the impact that publicity had on the jury pool in Bronx County, respondent concluded that maintaining the motion papers under seal was the only means available to avoid tainting the jury pool.

As a preliminary matter, it is our view that respondent's reference in his posttrial order to the "entire trial record" is sufficiently broad to encompass the motion papers and other material submitted to the court on the *Sandoval* motion. As noted by defendants, their involvement in prior shooting incidents was fully explored at trial, and respondent's rationale for excepting the trial record from the sealing provisions of CPL 160.50 (1) would apply equally to the *Sandoval* materials. We therefore conclude that the motion papers and other material submitted on the *Sandoval* motion are no longer sealed by respondent's pretrial order and have been excepted from the

CPL 160.50 sealing. Petitioners therefore require no relief in this proceeding in order to gain access to those items.

To the extent that the issue may not be moot, we also conclude that respondent did not err in initially sealing the papers and documents submitted in connection with the *Sandoval* motion. Although petitioners are correct in their contention that neither the hypothetical risk of prejudice nor intense public scrutiny is sufficient to deny public access (*see, Matter of Associated Press v Bell*, 70 NY2d 32), their analysis ignores the finding of the First Department that, as a result of the pretrial publicity, defendants could not get a fair trial in Bronx County and it would be futile to even attempt to pick a jury there (*People v Boss, supra*). By the time the case was assigned to respondent, the risk of prejudice and of tainting the jury pool had advanced well past the point of merely hypothetical or possible. To the contrary, it cannot be doubted that release of the *Sandoval* documents would have generated considerable media attention on irrelevant and prejudicial information at a crucial time, i.e., when jury selection was imminent and the impact on the Albany County jury pool, which is substantially smaller than the Bronx County jury pool, would be at its greatest (*see, Matter of Johnson Newspaper Corp. v Clary*, 167 AD2d 968, *appeal dismissed* 77 NY2d 889).

Further, although it may be that a sealing order permitting the unsealing of the documents upon commencement of the trial and completion of the jury selection process was a viable alternative to the order issued by respondent, petitioners bore the burden of proposing alternative procedures (*see, People v Ramos*, 90 NY2d 490, 504) and failed to do so. We therefore conclude that there was a sufficient factual basis for respondent's order sealing the *Sandoval* material.

It is our further view that respondent did not err in barring access to the documents that were submitted for its in camera review in order to determine the merits of defendants' request for disclosure of *Brady* material. In determining whether a qualified 1st Amendment right attaches to a particular criminal proceeding, the US Supreme Court has established a two-pronged test: first, whether the place and process have historically been open to the press and general public; and, second, whether public access plays a significant positive role in the functioning of the particular process in question (*see, Press-Enterprise Co. v Superior Ct.*, 478 US 1, 8). By definition, an in camera review or inspection is conducted "out of the hearing of the public" (*Matter of Westchester Rockland Newspapers v*

*Leggett*, 48 NY2d 430, 442) and, therefore, has not historically been open to the press and general public. Obviously, public access plays no role in the functioning of the process and, in fact, public access would frustrate the process by providing a defendant with immediate access to the very material that is subject to the disclosure dispute. Thus, the press and public have no 1st Amendment right of access to documents submitted to the trial court for an in camera review to determine a criminal defendant's request for *Brady* material (*see, United States v Wolfson*, 55 F3d 58, *cert denied* 516 US 990).

Although New York recognizes a common-law right of access to court records, in light of the "dearth of New York cases applying the common-law right of access," New York courts "look to Federal decisional law for instruction" (*People v Burton*, 189 AD2d 532, 535). Notably, Federal decisional law has held that the common-law right of access does not extend to the in camera review process undertaken by a trial court in resolving a *Brady* disclosure dispute (*see, United States v Wolfson, supra*). We therefore conclude that respondent did not err insofar as the sealing order applies to defendants' *Brady* motion papers and the material which respondent found not to be *Brady* material (*see, id.*). As with the papers submitted on the *Sandoval* motion, the *Brady* motion papers are no longer sealed by respondent's pretrial order and have been excepted from the CPL 160.50 sealing. The tapes and transcripts submitted for respondent's in camera review have been returned to the Bronx County District Attorney and are not subject to disclosure.

The remainder of petitioners' contentions have been considered and either found to be unavailing or rendered moot by the conclusion of the trial against defendants and respondent's release of the entire trial record, the exhibit list and the videotapes of the trial to the public. The papers submitted on the *Sandoval* and *Brady* motions, which had been filed with this Court as confidential exhibits, shall be returned to the Albany County Clerk for inclusion in the trial record.

CARDONA, P. J., PETERS, GRAFFEO and MUGGLIN, JJ., concur.

Adjudged that the petition is dismissed, without costs.