■ In the Matter of GERALD D. JENNINGS, as Mayor of the City of Albany, Respondent, v JONATHAN LIPPMAN, as Chief Administrative Judge of the Courts of the Unified Court System of the State of New York, Appellant. [762 NYS2d 447] —Mercure, J.P. Appeal from a judgment of the Supreme Court (Canfield, J.), entered May 3, 2002 in Albany County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, for reimbursement of security service expenses.

The narrow issue before us is whether, in interpreting Judiciary Law § 39 (3) (b), respondent rationally concluded that no funds were appropriated to reimburse petitioner for extraordinary security measures, such as those taken by the City of Albany—largely in maintaining a perimeter outside the Albany County Courthouse—during a high profile trial.

Pursuant to Judiciary Law § 39 (3) (b), petitioner applied to respondent for reimbursement of $269,805.97 expended by the City of Albany for security services provided outside the Albany County Courthouse in connection with the trial of four police officers accused of murdering Amadou Diallo (*see People v Boss*, 261 AD2d 1 [1999]).[1] In denying petitioner's request, respondent stated that "[t]here is no appropriation available to reim-

---

1. Although the defendants were indicted in Bronx County, their pretrial motion for a change of venue was granted, removing the case to Albany County (*People v Boss, supra* at 7-8).

burse a locality for * * * expenses that may be incurred because of the need for increased police presence during a highly publicized controversial trial." Petitioner then commenced this CPLR article 78 proceeding seeking an order directing reimbursement. Supreme Court granted the petition to the extent of ordering respondent to reimburse petitioner with any and all unutilized security funds from all judicial districts in the state as of the date of petitioner's application, October 19, 2000, up to the full amount requested. Respondent appeals and we now reverse.

Initially, we agree with Supreme Court that respondent's interpretation of Judiciary Law § 39 (3) (b) is entitled to deference. That section provides:

"Political subdivisions which provide security services for the courts, the cost of which is not included in that portion of the budget of the political subdivision used in the computation of the amounts set forth in column A in paragraph (a) of subdivision two of this section shall be entitled to reimbursement by the state within the amounts appropriated to the administrative office for the courts for that purpose" (Judiciary Law § 39 [3] [b]). There is no dispute that the statute, on its face, limits reimbursement to "the *amounts appropriated*" by the Legislature for reimbursement of "security services for the courts" (Judiciary Law § 39 [3] [b] [emphasis added]). Here, the determination of the scope of the Legislature's appropriation to the administrative office for the courts "involves knowledge and understanding of underlying operational practices" (*Matter of Gruber*, 89 NY2d 225, 231 [1996] [internal quotation marks and citation omitted]) entailed in the budgetary appropriations process. Thus, we "will not disturb [respondent's] interpretation of the provision if it is supported by a rational basis" (*id.* at 231; *see Matter of Albano v Board of Trustees of N.Y. City Fire Dept.*, 98 NY2d 548, 553 [2002]).[2]

Respondent argues that appropriations by the Legislature are made pursuant to Office of Court Administration budget requests and that all such requests limit reimbursement to services provided for security "in the designated courts and on the court premises." That is, budget requests do not cover extraordinary services that are provided for security off court premises, such as those necessary to maintain public order in

---

**2.** To the extent that respondent argues that petitioner's request for reimbursement was too late because it was made during October 2000, after appropriations for security expenses included in the 1999-2000 judiciary budget covering the time of the *Boss* trial had already lapsed, his argument is unpreserved for our review.

the streets during controversial trials and there is no appropriation for such services. Thus, Judiciary Law § 39 (3) (b) does not authorize reimbursement for such services.

This interpretation is supported by respondent's description of the budget process, which, according to respondent's affidavit, begins with the administrative judge of each judicial district making a determination as to the level of security personnel that will be necessary to maintain adequate court security *under normal circumstances*. This estimate is based on general guidelines that reflect court administrators' past experience regarding the level of security *normally* required on court premises. Based on the administrative judges' estimates, the Office of Court Administration compiles a budget proposal for the entire court system, which is submitted first to the Governor and ultimately presented to the Legislature for consideration. The Legislature appropriates funds for the Judiciary based on this proposal, including funds for security services. Inasmuch as the yearly budget proposal is limited to security services required under normal circumstances, it does not cover "extraordinary court security expenses" necessitated by a high profile trial and, thus, reimbursement for such costs is not authorized by the statute (*Gribetz v Evans*, 113 AD2d 376, 382-383 [1985]).

Respondent asserts that petitioner's request was rejected because the services provided by the City of Albany during the *Boss* trial were beyond the scope of the intended purpose of the security appropriation made by the Legislature for fiscal year 1999-2000. Given the fact that the budget proposal submitted to the Legislature did not request an appropriation for extraordinary security services, respondent's conclusion that funds were not appropriated for services such as those provided by the City of Albany here is rational. Thus, regardless of whether such services can be considered to be "for the courts," as petitioner contends, the statute's express limitation of reimbursement to "the amounts appropriated" by the Legislature precludes recovery. Accordingly, respondent's denial of petitioner's request for reimbursement is consistent with the terms of Judiciary Law § 39 (3) (b) and cannot be said to be arbitrary and capricious.

A review of the legislative history of Judiciary Law § 39 (3) (b), which respondent also relies upon in analyzing the statute, provides further support for his determination. Prior to 1977, the expense of providing court security was largely the responsibility of the localities, which funded the courts (*see* L 1976, ch 966, § 1; *Gribetz v Evans, supra* at 379-380). After

April 1, 1977, pursuant to the Unified Court Budget Act, Judiciary Law former § 220 (3) (b)—the precursor to section 39 (3) (b)—provided that the state would reimburse local political subdivisions for court security services up to a specified amount set for each locality (*see* L 1976, ch 966, §§ 2, 5). While the Legislature provided substantial reimbursement for security services, the localities remained responsible for costs exceeding these rates (*see* L 1976, ch 969, §§ 2, 5; Mem of Senate Finance Minority, Bill Jacket, L 1983, ch 236; *see also Gribetz v Evans, supra* at 380).

In 1983, the Legislature enacted the current version of Judiciary Law § 39 (3) (b) to increase state funding of court security services and give the Office of Court Administration authority to negotiate with localities for improvements in security arrangements by eliminating the 1976 limits (*see* Mem of Assembly Judiciary Committee, Bill Jacket, L 1983, ch 236). Notably, there is no indication that the amendment intended to change the funding system to provide reimbursement for *all* security services or to alter the past practice of requiring localities to bear a portion of the security costs. Instead, the bill made only "technical changes" to the statute (*see* Mem of Assembly Judiciary Committee, Bill Jacket, L 1983, ch 236) and, as noted above, expressly limited the amount of reimbursement to "the amounts appropriated" by the Legislature (Judiciary Law § 39 [3] [b]). In light of the absence of any indication of a contrary intent, we will not presume that the Legislature intended, in enacting the amendment to section 39 (3) (b), to change the long-established practice of requiring localities to be responsible for security costs that do not fall within the scope of the Legislature's appropriation for that purpose (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 191, at 353).

In sum, respondent's determination cannot be deemed irrational in light of the absence of any appropriation by the Legislature. We also note that although the equities suggest that the City of Albany should be reimbursed for the extraordinary security services at issue, it is not within this Court's power to unilaterally expand the scope of the appropriation made by the Legislature.

Crew III, Peters, Rose and Lahtinen, JJ., concur. Ordered that the judgment is reversed, on the law, without costs, and petition dismissed.