Leonard Leigh Finz, J.
The sole issue to be determined in this motion is whether an action instituted in Nassau County by the Long Island Lighting Company (hereinafter Lilco) seeking damages against the New England Petroleum Company (hereinafter Nepeo) in the sum of $62,000,000 should be transferred to another county for trial.
A resolution of this difficult question requires a brief review of the factual predicate to this huge litigation. Recently, the American people faced one of the worst oil shortages ever reported. Without characterizing the legitimacy of this crisis, the public suffered through long and exhausting lines at gasoline .stations, in most cases receiving minimal amounts of fuel. Industry, too, fell victim to much of the publicized “ oil crisis ”. The shortage of fuel fed every aspect of the towering inflation from which this nation — indeed, the entire world — is suffering. Similarly, utility companies, thirsting for the precious fuel to provide electrical energy, were suddenly faced with the pressure to purchase it wherever it could be obtained despite its soaring price. The increased costs occasioned thereby were passed ultimately to the consuming public.
Consequently Lilco, an exclusive supplier of electricity to all of Nassau County (but for two incorporated villages which together account for less than 5% of the county’s total population), found it necessary to purchase fuel oil from the defendant Nepco at a vastly increased price, in order to service its more than 1,200,000 Nassau County customers. The higher costs *184 occasioned thereby were passed on to its consumers, who ultimately found, to their chagrin, that their monthly utility bills were oppressively higher.
Lilco, by way of this lawsuit, now contends that it was compelled to purchase fuel oil from Nepeo at higher prices than those fixed by the terms of the contract entered into between the parities. It is the difference between what Lilco considers to be the agreed price and that which Lilco claims it paid to Nepeo, that serves as the basis of its .claim for $62,000,000 in damages in this action presently pending in Nassau County.
While this is an action, as stated above, for breach of contract and for the recovery of overcharges alleged to have been made by the defendant, appended to its motion papers is a copy of the complaint -in another action instituted by Lilco in the United States District Court for the Southern District against a group of oil companies. In that action, Lilco seeks to recover treble damages charging an alleged conspiracy or combination in restraint of trade and to enjoin monopolistic practices of the named defendants, to wit, Standard Oil Company of California, Texaco, Inc., Mobil Oil Corp., Chevron Oil Trading Co., Texaco Overseas Petroleum Co. .and “John Doe’s” 1 through 10. It is significant that the defendant, Nepeo, in this action, is not a named defendant in the action pending in the United States District Court, but instead is cast in the role of an injured party or victim of the afore-named oil companies. Lilco is taking direct action against the named defendants for conspiring or combining to injure Nepeo directly and Lilco resultantly.
In the Federal action, Lilco alleges that the defendant Nepeo entered into an agreement whereby Nepeo would be the plaintiff’s sole supplier of low sulphur oil originating in Libya. The plaintiff then continues to describe the conditions which precipitated the current oil crisis and further details the various maneuvers and machinations whereby the defendants in the Federal action are alleged to have combined to prevent Nepeo from receiving or acquiring any oil originating in Libya or, indeed, from any other source. The result of these actions, alleges Lilco, was that Nepeo was forced to engage in its own maneuvers in order to acquire the oil necessary to supply Lilco, but at a precipitously increased price, and claims a series of damages which it sustained by reason of the alleged monopolistic practices, seeking $186,000,000 as treble damages based on the same $62,000,000 claimed in this action.
In that action there is an allegation that if the plaintiff recovers the damages that it seeks, the sum recovered would *185 ■be refunded to its Nassau County customers “ to the extent approved by the New York Public Service Commission”. No such allegation appears in the action pending in the Supreme Court, Nassau County. In May of this year, however, newspapers such as the New York Times, Wall Street Journal, and Newsday, reported that according to a Lilco spokesman, if diamages were recovered from its fuel suppliers, then Lilco customers would receive a rebate to the extent of surcharges occasioned by the increased fuel costs. Lilco now contends that such funds would be forthcoming only from the Federal antitrust suit commenced by Lilco against the oil companies other than Nepco. This related Federal litigation was reported in the same newspaper articles in such a fashion that no distinction was made between this and the antitrust action, or indicating where the refunds to customers would originate. In other articles, the distinction only appears upon close scrutiny.
Nepco now moves this court to change the venue of the action •to New York County, alleging in essence that it cannot receive a fair trial in Nassau County by reason of the fact that all of the jurors and the Judges there have an interest in the outcome of this case. In order to place this matter in proper perspective to the statutes alleged therefor, it is necessary to review the sections involved.
CPLft 510 (subd. 2) authorizes the making of a motion for a change of venue where a party to the action believes that it cannot obtain a fair and impartial trial. In addition, CPLB 4110 (subd. [a]) provides that jurors are disqualified from serving in the action if the juror is an employee of a party, a stockholder of a corporate party, and in a personal injury action if he is an officer, director, stockholder or employee or in any way connected with ian insurance company covering against liability for personal injuries. As regards -the disqualification of Judges, section 14 of the Judiciary Law forbids a Judge to sit in judgment in an action in which he is a party, has been an attorney or counsel to any of the parties, is related to any of the parties or in any case in which he has an interest. He may, however, participate in an action where he is a stockholder in one of the corporate parties if both sides waive the disability imposed by this section. 'Section 19 of the Judiciary Law further directs that a Judge shall not sit in a case where he is interested in the costs arising out of the action.
Nepco contends that all Judges and jurors residing in Nassau County have a pecuniary interest in this action and should *186 therefore be disqualified under CPLR 4110 (subd. [a]) and sections 14 and 19 of the Judiciary Law, as well as the due process clause as interpreted in Turney v. Ohio (273 U. S. 510) and Commonwealth Corp. v. Casualty Co. (393 U. S. 145). Conversely, it is Lilco ’s position thiait in the absence of contrary proof, it must be assumed, as generally would be the case, that there are available Judges and sufficient jurors for a trial in Nassau County who are not direct Lilco customers. The test to be applied in order to determine whether a Judge has an interest in a case has been clearly defined.
“ The interest which will disqualify a judge to sit in a cause need not be large, but it must be real; it must be certain and not merely possible or contingent; it must be one which is visible, demonstrable and capable of precise proof.” (People v. Whitridge, 144 App. Div. 493, 498.)
Specifically defining the nature of the interest which must be discovered in order to disqualify a Judge, it was stated in Tumey v. Ohio (supra, p. 523) a case where the mayor, who was acting as a Judge, received a fee upon each conviction, in addition to his salary: “But it certainly violates the Fourteenth Amendment, and deprives a defendant in a criminal case of due process of law, to subject his liberty or property to the judgment of a court the judge of which has a direct, personal, substantial, pecuniary interest in reaching a conclusion against him ”. The court repeated the foregoing definition in Bradford Audio Corp. v. Pious (392 F. 2d 67, 71): “ Justice Gavagan’s participation in the state court case when he was the owner of shares in the corporation to a value of about $300 was a violation of the law of -the ¡State of New York. [Judiciary Law, § 14.] Due process implies an impartial court, which is not provided if the judge has a direct, personal and substantial pecuniary interest in the case.”
The court then went on to say that Justice Gavagan’s participation in the case did not create an aura of prejudice due to his limited participation.
The inference ¡raised by Nepeo that the Judges resident and sitting in Nassau County would be unable to provide a fair trial by reason of a “pecuniary interest” is a concept as fallacious as it is denigrating to the integrity of the Justices sitting in Nassau County and is herewith rejected.
With respect to the jurors of Nassau County, this court must consider not only the possibility of an unconscious bias that may be submerged in their minds as it relates to this issue but the appearance of it as well. (Arkwright v. Stembugler, *187 283 App. Div. 397; Jacob v. Town of Oyster Bay, 119 App. Div. 503; see, also, People v. Ferdinando, 40 A D 2d 714; Cabanis v. Reich, 59 Misc 2d 821.) The instant case appears to have a marked similarity to Althiser v. Richmondville Creamery Co. (13 A D 2d 162, affg. 27 Misc 2d 456, where a trial of a suit by dairy farmers against major purchasers of their product was transferred from a county heavily involved in the dairy industry. The count stated (p. 164): “It seems to us sufficient if there be shown facts, that is, existent influential factors, from which probable partiality in substantial degree, and upon the part of a substantial number of persons, and such as to presage appreciable and extensive influence, may reasonably be inferred; so that, in the language of the statute, ‘ there is reason to believe that an impartial trial cannot be had ’.”
This court is concerned that, depending upon a recovery by Lilco in this action, even if rebates will not or cannot be made to plaintiff’s customers, jurors will assume that such might occur or that future rights might be affected by reduced fuel costs or increased funds available to Lilco. To even examine jurors concerning such an assumption on voir dire would raise the danger of unduly emphasizing prejudicial material. (See Graham v. Waite, 23 A D 2d 628.)
Nothing can obscure the fact that the cost of living is a major, if not a paramount, contemporary public issue. The cost of fuel is a continually publicized matter. It impinges heavily upon the income of the vast majority of our citizens and is pervasive throughout the entire economic life of our Nation. It may be true that the same considerations may affect the residents of New York County, but at least they are not directly concerned with any consideration of a possible rebate or pecuniary benefit from this lawsuit and, further, there is the strong possibility that to the New York resident Lilco and Nepco are distant entities which can be considered dispassionately and objectively.
Considering the situation with which this court is confronted, the magnitude of this litigation, and being mindful of the considerations which impelled the making of this motion in Queens County instead of the county where the action is pending, this court believes that the interests of justice will better be served by a transference of this action to another county. Pragmatically, the difficulty of selecting a jury will be reduced vastly and the perplexing question, of which of the eurdite and astute Justices in Nassau County would not be looked at askance, at least by the defendant, will have been totally eliminated. Lilco’s *188 electricity charges .are sio intimately connected with the cost of living of all residents of Nassau County that in the present atmosphere there is sufficient risk of a possible subliminal bias that requires the matter to be transferred from Nassau County.
Accordingly, this motion is granted.