David T. Gibbons, J.
Upon the foregoing papers it is ordered that this motion by defendants, Nicholas Kuzmowycz, M.D. and David Wekler, M.D., for an order, pursuant to CPLR 510 (subd 2), granting a change of venue of the within action from Nassau County to Suffolk County on the ground that there is reason to believe that defendants cannot obtain an impartial trial in Nassau County, is denied.
This action is the second of two related actions based on claim of medical malpractice which resulted in the death of Leonard Fazio.
The first action was brought by Carmen Fazio, as administratrix of said deceased, against Meadowbrook Hospital and the County of Nassau to recover damages for wrongful death.
On October 11, 1972, a settlement of that action was consummated under which the County of Nassau paid the plaintiff the sum of $140,000.
An application by the defendants, in said prior action, to be *1064 permitted to bring a third party action against the instant defendants, upon the ground that the decedent’s death was due also to their alleged medical malpractice, was denied by the court for the reason that the introduction of such additional issues would unduly delay plaintiff Fazio’s day in court.
Following the payment of the amount of such settlement, the plaintiff, County of Nassau, commenced this action against the defendants herein, for contribution from them as parties liable over to it, wholly or in part, for the recovery obtained by the plaintiff in the prior action.
The defendants’ instant motion is founded upon the claim that they could not secure an impartial trial in Nassau County for the reason that any juror chosen in Nassau County will have a direct financial interest in an outcome favorable to the plaintiff, County of Nassau, and that, under such circumstances, he will retain an unconscious bias which will tend to prejudice defendants’ rights to a fair and impartial trial.
In 1867 the Court of Appeals, in People v Bennett (37 NY 117), expressed the policy of the law in dealing with the question of the possible bias in the mind of a juror in a situation involving a proceeding against a defendant for conduct resulting in an economic loss to the body politic. In that case, the defendant was charged with stealing property of the County of Cortland, and his counsel challenged the array of jurors on the ground that, being inhabitants of said county, they had an interest in the stolen goods. The Court of Appeals, per Davies, C. J., held that this fact was not sufficient to disqualify a juror. The court stated (p 132): "Can it be seriously urged that, if the State capítol is fired by an incendiary, all the inhabitants of the state are disqualified to sit as jurors on his trial, because the building destroyed is the property of the state, and all the inhabitants of the state are interested in the property of the state? The statement of the proposition carries with it its own refutation”.
Although it is a fundamental principle of justice that jurors should not be interested in a controversy which they are called on to determine, it must also be recognized that the degree of inherent prejudice in the mind of a juror, because of some interest in the subject matter under consideration, may range from immediate and controlling, to remote and inconsequential, and it is a fundamental prerequisite of a fair trial that where his interest is of such magnitude as to overwhelm his capacity to act fairly and impartially, his usefulness to *1065 provide such function ceases to exist. Essentially, the basic integrity and sense of justice which most men possess must be trusted so far as to believe that they will not be improperly influenced by an interest of the kind which they have in common with the whole community (Common-wealth v Brown, 147 Mass 585).
The recent case of Long Is. Light. Co. v New England Petroleum Corp. (80 Misc 2d 183), is cited by defendants Wexler and Kuzmowycz, in support of this contention that venue should be changed from Nassau County in order to insure an independent jury and a fair trial. However, that case can be distinguished from the present in several respects.
First, that case did not deal with a lawsuit involving a municipal corporation, but rather with an action instituted by a private utility. Although the potential jurors there may have been biased because of their customer relationship to the plaintiff, Long Island Lighting Co. (LILCO), such an interest is clearly not equivalent to a potential juror’s mere status as a resident and taxpayer of a litigating municipal corporation.
Second, the potential jurors in that case, as customers of the plaintiff had an apparently substantial financial interest in the outcome of the litigation. Such a vendor-customer relationship is not present here, nor do the potential jurors have a substantial financial interest, either real or apparent, in the outcome of the litigation.
Thirdly, the underlying subject matter of the LILCO case, namely, the Arab oil boycott and the resultant oil shortages, was the object of much media coverage and public concern. The existence and purpose of the lawsuit, as well as its possible financial ramifications, were also widely reported at the time. In such a highly charged environment, and with all those factors considered, it is conceivable that a challenge to the venue of that action could have been made on the basis of prejudicial pretrial publicity as well as upon the claim that a substantial percentage of the prospective jurors had a potentially significant personal interest in the outcome of the lawsuit. In the instant case, however, the court is not faced with a subject of great notoriety and public interest, nor is there presented the question of adverse pretrial publicity.
Similarly, Althiser v Richmondville Creamery Co. (27 Misc 2d 456), and Arkwright v Steinbugler (283 App Div 397), which are cited by defendants, can be distinguished from the present action. In Althiser, the court granted a motion for *1066 change of venue in an action involving 126 dairy farmers, where the evidence showed that many of the potential jurors in the small, rural county were also dairy farmers, and, although not plaintiffs in the action, were in the same position as the plaintiffs with reference to the dispute which was the subject matter of the action. In the instant case, we are not faced with a situation where the potential jurors have such a close personal and business relationship to the litigants, and, hence, are not faced with the possibility of real and substantial prejudice.
The Arkwright case involved a plaintiff who was a Supreme Court Justice in Kings County, and the motion for a change of venue was granted because of the difficulties which would be faced by a fellow Justice who would preside at the trial. There is no evidence that there would be a similar risk of unconscious bias on the part of the Justices who may be called upon to try the instant case.
There are a number of reasons, both of public policy and practical considerations, why the decision in LILCO should not be broadened so as to include litigation involving municipal corporations.
For this court to declare that a potential juror in Nassau County is automatically unfit to render a fair and impartial verdict in an action in which the county is a party, merely because of that juror’s status as a taxpayer of said county, and not because of any provable biases on his or her part, would clearly be against the public policy of this State, as well as violative of the Constitution. (Hoyt v Florida, 368 US 57.) Mere suspicion or belief that an impartial jury cannot be found is not sufficient grounds for a change of venue (Clausi v Hudson Cement Co., 26 AD2d 872).
It is to be noted that the legislature has already definitively expressed its policy in CPLR 504 (subd 1) which mandates that in the converse situation, where the coxinty is a defendant, the place of trial must be in the same county.
If the inherent bias, claimed by the defendants, exists in the mind of a juror in a suit brought by the county, as here, would not such bias also operate in favor of the county in an action where it is the defendant? The legislative policy is contrary to such conclusion. No valid reason is advanced to show that the result would be different under the circumstances of this case. If the movant’s reasoning were to be accepted, the State of *1067 New York could not bring an action anywhere within the State.
Any possible prejudice or bias by a prospective juror may, as in any other case, be inquired into, and, upon such showing, he or she may be eliminated upon the voir dire in the jury selection process.