■ MELISSA DEBOLT et al., Appellants, v DAVID BARBOSA et al., Respondents, et al., Defendant. [720 NYS2d 283] —Carpinello, J. Appeal from an order of the Supreme Court (Canfield, J.), entered May 1, 2000 in Rensselaer County, which granted defendants' motion for a change of venue.

While CPLR 510 (2) authorizes a court, in its discretion, to grant a motion for a change of venue where "there is reason to believe that an impartial trial cannot be had in the proper county," it is essential that sufficient facts to support such belief appear in the motion papers before that discretion can be exercised (*see, Noonan v Luther*, 128 App Div 673; *Althiser v Richmondville Creamery Co.*, 27 Misc 2d 456, *affd* 13 AD2d 162). We have reviewed defendants' submissions for a change of venue in this case and find that they fall short of establishing the requisite facts to invoke the discretion of Supreme Court. Accordingly, we reverse and remit the matter for trial in Rensselaer County. A recitation of the pertinent procedural events is necessary to gain a full understanding of the instant dispute.

The action stems from a September 4, 1996 bus-pedestrian accident. On that day, plaintiff Melissa DeBolt, then a freshman at Rensselaer Polytechnic Institute in the City of Troy, Rensselaer County, was struck by a school bus owned by defendant Albany Yellow Communications Company, Inc. and operated by defendant David Barbosa (hereinafter collectively referred to as defendants). The issue of venue apparently first surfaced during a discovery conference in June 1998. The parties have differing versions of what actually transpired at that conference; plaintiffs claim that defense counsel merely advised Supreme Court that defendants were "considering" a change of venue motion on the ground that they could not obtain an impartial trial in Rensselaer County. Defendants claim that they actually *made* an oral application to change venue outside Rensselaer County. No transcript of these proceedings is in the record on appeal. Assuming that the motion was made at that conference, it was apparently orally denied by Supreme Court on the ground that the City of Troy was then also a party defendant to the action and thus venue had to remain in Rensselaer County. Approximately one year later, Supreme Court granted summary judgment to the City,[1] a decision recently upheld by this Court (278 AD2d 764).

No written motion to change venue was thereafter filed by defendants. Rather, on the first day set for the commencement of the projected two-week trial (July 6, 1999)—when the jury pool was impaneled and plaintiffs had over 22 local and out-of-town witnesses, both lay and expert, lined up to testify—defendants made a "second" oral application to change venue. The alleged basis of this application was that press accounts of

---

1. Supreme Court's decision was dated June 5, 1999 and entered June 24, 1999.

problems that Albany Yellow had experienced with the Enlarged City School District of Troy rendered it impossible for defendants to obtain an impartial trial in Rensselaer County. Defendants did not submit *any* affidavits or documentary proof in support of their application. Notwithstanding, Supreme Court granted the motion. Within eight weeks of that order being entered, plaintiffs perfected an appeal to this Court.

Thereafter, defendants moved in this Court to strike plaintiffs' record and brief on appeal on the ground that approximately 10 "documents" relied upon by Supreme Court in rendering its decision were not included in the record for this Court's consideration. The documents allegedly improperly omitted from the record pertained to litigation between Albany Yellow and the School District in which the School District had sought to terminate its student transportation contract with Albany Yellow. Supreme Court had also presided over that litigation and had issued a decision over one year earlier granting summary judgment in favor of the School District. Regardless of what Supreme Court might have referred to in its oral decision to grant defendants' application to change venue, defendants themselves certainly did not submit any documents, let alone these 10 documents, in support of that motion. We denied the motion to strike the appellate record and brief.

In the interim, defendants had moved to "resettle" Supreme Court's order "[i]n an effort to further clarify the documents relied upon by [Supreme Court]." Instead of resettling its prior order, Supreme Court vacated it, without prejudice for defendants to renew within 20 days.[2] Simply stated, the court gave defendants an opportunity to do that which they had failed to do on the oral application, namely, provide factual support for their application for a change of venue under CPLR 510 (2). Over a month later, defendants filed their motion to renew and included in their application those papers which had been submitted to Supreme Court in Albany Yellow's then three-year-old contract dispute with the School District, including Supreme Court's decision granting the School District's motion for summary judgment. Supreme Court granted the change of venue motion, prompting this appeal.

As is commonplace in the criminal arena, a change of venue motion made *on the day of trial* should be denied (especially where, as here, it is wholly unsupported by affidavits or other written documentation) until an actual attempt has been made to impanel an impartial jury from those potential jurors then

---

2. As a result of the vacatur of that order, plaintiffs' appeal was dismissed.

present in the courthouse, with that process being transcribed (*see, e.g.*, Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 230.20, at 195; *see, e.g., People v Smith*, 63 NY2d 41, 69, *cert denied* 469 US 1227; *People v Boudin*, 87 AD2d 133; *see also, Wiedemann v Smithtown Gen. Hosp.*, 56 AD2d 649). If, despite best efforts through voir dire, counsel for either side continues to believe, and can objectively demonstrate, that an impartial trial is beyond the realm of possibility, the motion could then be renewed (*see, People v Parker*, 60 NY2d 714). Having been denied the opportunity to review such a record, we turn to defendants' claim that they cannot obtain an impartial trial in Rensselaer County as supported by the documentary evidence filed on their motion to renew.

Defendants "were required to come forward with facts demonstrating a *strong possibility* that an impartial trial of the action could not be obtained" in Rensselaer County (*Albanese v West Nassau Mental Health Ctr.*, 208 AD2d 665, 666 [emphasis supplied]; *see, County of Onondaga v Home Ins. Co.*, 265 AD2d 896; *Krupka v County of Westchester*, 160 AD2d 681) and a mere belief, suspicion or feeling that an impartial trial cannot be had is an insufficient ground to grant the motion (*see, Krupka v County of Westchester, supra; Clausi v Hudson Cement Co.*, 26 AD2d 872, 873). The majority of the material submitted by defendants consists of internal memoranda generated by, or letters between, the School District and Albany Yellow involving the School District's perceived deficiencies in Albany Yellow's performance of the parties' bus transportation contract in 1997 and 1998. Although these documents referenced various traffic infractions, accidents and parental complaints about Albany Yellow during this time period, the vast majority of this material was *not* publicly disseminated.

The concerns of School District officials and the complaints of parents do not, ipso facto, transform into widespread *public* frustration or fury concerning Albany Yellow or reflect pervasive *public* "outrage" as defendants contend. As plaintiffs established, over 100,000 people existed in the potential jury pool who were not closely associated with the School District, either as an employee or parent, and therefore not directly interested in the outcome of its litigation with Albany Yellow (*see, Babylon Assocs. v County of Suffolk*, 89 AD2d 57).[3] Moreover, there has been no demonstration that any potential juror

---

3. In opposition to the change in venue motion, plaintiffs submitted concrete numbers to support their argument that Albany Yellow could receive an impartial trial in Rensselaer County. Specifically, they submitted

in Rensselaer County has any *stake* in the outcome of *this* litigation (*compare, Althiser v Richmondville Creamery Co.*, 13 AD2d 162, *supra*; *County of Nassau v Southside Hosp.*, 89 Misc 2d 1063; *Long Is. Light. Co. v New England Petroleum Corp.*, 80 Misc 2d 183).

To be sure, some of the information contained in the internal documents—including several damning incidents involving Albany Yellow—made its way into various public accounts of the parties' ongoing dispute. The *record*, however, contains only 10 articles and one editorial from two separate newspapers published over a 15-month period. To suggest that this media coverage was either "widespread" or resulted in "righteous furor" is an exaggeration of the record (*compare, Babylon Assocs. v County of Suffolk, supra*, at 58 [change of venue denied even where thousands of newspaper articles were written about a scandal concerning the plaintiff]). In fact, none of the articles was of recent vintage; the last having been published on March 28, 1998, some 15 months *before* the scheduled July 6, 1999 trial (*see, Hayland Farms Corp. v Aetna Cas. & Sur. Co.*, 89 AD2d 516).

In addition, most of the articles contained fair and accurate overviews of the parties' dispute (*see, Tongate v Eric R. R. Co.*, 123 Misc 580) and at least two could be viewed as *supportive* of Albany Yellow (*see, People v Bosket*, 216 AD2d 791, 792). Said differently, these articles do not in either tone or content establish that the entire jury pool of Rensselaer County, or even a significant portion thereof, was so barraged with unduly unfair or negative publicity about Albany Yellow as to preclude even an attempt at the selection of a fair and impartial jury (*see, Noonan v Luther*, 128 App Div 673, *supra*; *compare, People v Boss*, 261 AD2d 1). None of these articles pertain specifically to the instant personal injury action and no attempt was made by defendants to show the "effects" of this alleged widespread, negative publicity in the form of public opinion surveys (*compare, People v Boss, supra*, at 6; *Babylon Assocs. v County of Suffolk, supra*). In sum, "the record is devoid of any factual situations from which the court might conclude that [these newspaper articles] have affected public opinion or any residents of the county who might be prospective jurors to the

uncontroverted evidence that there are 117,587 people in the jury pool, 4,825 enrolled students in the School District, 470 teachers employed by the School District and 25 administrators. Assuming that each child has two parents (4,825 × 2 = 9,650) and that each School District employee lives with another adult (495 × 2 = 990), this still leaves well over 100,000 people in Rensselaer County who did not have a direct interest in the controversy between the School District and Albany Yellow.

extent of precluding a fair and impartial trial" (*Clausi v Hudson Cement Co.*, 26 AD2d 872, 873, *supra*).

Peters, J. P., Spain, Mugglin and Lahtinen, JJ., concur. Ordered that the order is reversed, on the law, with costs, and motion denied.