■ EDWARD BLAINE et al., Respondents, v INTERNATIONAL BUSINESS MACHINES CORPORATION, Appellant. [937 NYS2d 405]—

McCarthy, J.

We affirm. A trial court's disposition of a discretionary motion for change of venue will not be disturbed absent an abuse of discretion (*see Manchester Tech. v Hansen*, 6 AD3d 806, 807 [2004]). To prevail on the motion here, defendant was required to demonstrate a strong possibility that an impartial trial could not be obtained in Broome County (*see Matter of Michiel*, 48 AD3d 687, 687 [2008]; *Cohen v Bernstein*, 9 AD3d 573, 574 [2004]; *DeBolt v Barbosa*, 280 AD2d 821, 824 [2001]). In an ef-

fort to make such a demonstration, defendant argued that the jury pool contained a large number of relatives of plaintiffs in the nine actions, as well as defendant's former employees and their families. Having considered these arguments, we cannot conclude that Supreme Court abused its discretion in denying defendant's motion.

Any relative within six degrees of consanguinity or affinity to a party is automatically disqualified from jury service (see CPLR 4110 [b]). Defendant submitted an expert report from a demographer and statistician who determined that there is a 28.6% chance that at least one juror on a randomly selected jury of six individuals and two alternates from Broome County would be related to one of the 943 plaintiffs. A major flaw in this statistic is that juries are not randomly selected. Jury questionnaires and the voir dire process should filter out relatives and decrease the chances of empaneling such a person. While we acknowledge that some jurors or parties may not know all of their distant relatives within the sixth degree of consanguinity or affinity—such as their great-great-grand-nephews—the statistic proffered by defendant is misleading. Random selection of a jury would include not only those distant and possibly unknown relatives, but also close relatives—such as parents, children and siblings—who would almost certainly be known to the parties and potential jurors. Including those close relatives in the calculations skews the statistics, significantly decreasing the reliability of such numbers. On that basis alone, Supreme Court could have found that defendant did not meet its burden. Thus, the court did not abuse its discretion in denying the motion to change venue without prejudice to renew.

Additionally, when Supreme Court severed the claims of two families from the remainder of the plaintiffs in this action, it created two separate actions (see Kline v Town of Guilderland, 289 AD2d 741, 742 [2001]), rendering the eight individual members of those families the only party plaintiffs in the severed action. As CPLR 4110 (b) only disqualifies relatives of a "party" to the action from serving on the jury, relatives of the 935 plaintiffs in the related actions are not automatically disqualified under that subdivision. They may, however, be removed for bias or favor (see CPLR 4108). The distinction is important. If a relative of a party within six degrees of consanguinity or affinity is seated on the jury, the verdict can be annulled up to six months after it is rendered, without any need to show prejudice (see CPLR 4110 [b]; Maiello v Johnson, 18 NY2d 826, 828 [1966]). On the other hand, a distant relative—such as a first cousin twice removed—of a party in one of the related actions

need only be disqualified if he or she is aware that a relative has a pending claim against defendant and, as a result, cannot be impartial, or is in some other way biased. The failure to remove such a person from the jury panel will not result in a mandatory annulment of the verdict (compare CPLR 4110 [b]). Defendant's expert asserted a more than 70% chance of randomly selecting a jury without relatives of any of the 943 plaintiffs. Adjusting for the non-random selection of juries and the limited number of party plaintiffs in the first trial, there would seem to be a high probability of selecting a jury without any relatives of a party involved in that trial.[2]

Similarly, although 24,000 of defendant's former employees are alleged to be living in Broome County, only persons "in the employ of a party" are specifically listed in the statute as subject to a challenge to the favor from serving as jurors in that trial (see CPLR 4110 [a]). The statute does not provide a ground for challenging potential jurors based on a former employment relationship. Although former employees or their family members may have knowledge related to the action, may have an interest in defendant due to a pension or may otherwise have a bias for or against defendant, such biases may be addressed through a comprehensive juror questionnaire sent to prospective jurors before jury selection and through the jury selection process itself (see CPLR 4108). Here, Supreme Court stated that it would exclude defendant's former employees, as well as residents of the Village of Endicott, who may be affected by or have preconceived notions about the environmental contamination there. Nevertheless, the potential jury pool contained more than 67,000 people, leaving plenty to choose from even with all of the potential disqualifications.[3] Thus, the court did not abuse its discretion in denying defendant's motion without prejudice to renew at the close of voir dire, thereby permitting the parties to make a reasonable attempt at selecting an impartial jury (see DeBolt v Barbosa, 280 AD2d at 823-824; see also People v Smith, 63 NY2d 41, 69 [1984], cert denied 469 US 1227 [1985]).

Peters, J.P., Rose, Kavanagh and Garry, JJ., concur. Ordered that the order is affirmed, with costs.

---

2. Previous actions arising from highly-publicized toxic torts have been venued in the same county where the environmental contamination occurred, most notably the Love Canal actions involving "600 separate unconsolidated actions and approximately 1,400 plaintiffs" in Niagara County (Matter of Love Canal, 92 AD2d 416, 417 [1983]; see Matter of Love Canal Actions, 161 AD2d 1169 [1990]).

3. Although defendant emphasizes that Broome County's qualified jury list contained only 4,592 names, prior to trial more individuals could be qualified and more names could be added to the list from the County's total pool of 67,551 potential jurors.