Hall v Nassau County (2025 NY Slip Op 05796)

Hall v Nassau County

2025 NY Slip Op 05796

Decided on October 22, 2025

Appellate Division, Second Department

Barros, J.P.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on October 22, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
BARRY E. WARHIT
LILLIAN WAN
PHILLIP HOM, JJ.

2024-03434
 (Index No. 609994/23)

[*1]Wayne J. Hall, etc., et al., appellants, 
v
Nassau County, et al., respondents.

APPEAL by the plaintiffs, in a putative class action, inter alia, for a judgment declaring that the tax assessment method used by the defendants was discriminatory and unconstitutional, from an order of the Supreme Court (Lisa A. Cairo, J.), dated February 2, 2024, and entered in Nassau County. The order granted the defendants' motion pursuant to CPLR 3211(a) to dismiss the complaint and denied, as academic, the plaintiffs' cross-motion pursuant to CPLR 510(2) to transfer venue from Nassau County to Queens County.

Kirby McInerney, LLP, New York, NY (Andrew M. McNeela, David A. Bishop, and Karina Kosharskyy of counsel), for appellants.
Jonathan A. Sorkowitz, Chappaqua, NY, for respondents.

BARROS, J.P.

OPINION & ORDER
The plaintiffs, homeowners in Nassau County, commenced this action individually and on behalf of those similarly situated, seeking declaratory, monetary, and injunctive relief for homeowners in predominantly nonwhite census tract communities in the County, alleging that the County's tax system was irrational, discriminatory, and unconstitutional. Specifically, the plaintiffs allege that the County's tax assessment policies and procedures, i.e., its freeze on reassessments from January 2010 until January 2018 and its use of a grievance procedure which was voluntary and yielded unscientific results unrelated to property values, shifted the property tax burden from wealthier, predominantly white communities in the County to lower income, predominantly nonwhite communities. The plaintiffs allege that from 2010 through 2016, property taxes on 61% of the County's residential and commercial properties increased by only $466, or 5%, on average, whereas the average increase for the other 39% of County properties was six times that amount: $2,748, or 35.7%. They allege that most properties in predominantly nonwhite communities comprised that 39%, which amounted to an aggregate shift in the property tax burden onto the plaintiffs and those similarly situated in a sum in excess of $1.7 billion.
The defendants moved pursuant to CPLR 3211(a) to dismiss the complaint based, inter alia, on lack of standing. The plaintiffs opposed the motion and cross-moved pursuant to CPLR 510(2) to transfer venue from Nassau County to Queens County. In an order dated February 2, 2024, the Supreme Court granted the defendants' motion, upon its determination that the plaintiffs lacked standing, and denied, as academic, the plaintiffs' cross-motion. The plaintiffs appeal.
1. The Plaintiffs' Allegations
The complaint describes the plaintiffs as residential property owners in the Village of Hempstead since prior to 2010, who are part of a proposed class of "[a]ll persons who owned residential property at any time from 2010 through the present that was located in a 'census tract' (as defined by the [United States] Census Bureau) in Nassau County in which most residents were [*2]nonwhite during any year when said persons owned that property." The complaint alleges that real estate taxes in the County are determined by calculating the amount of tax revenue needed for the budget and then dividing that amount pro rata among properties based upon property value. When tax assessments are frozen, as they were in 2010 through 2018, and 2021, 2022, 2023 and 2024, all property owners continue to pay the same proportion of tax revenue each year, even if certain properties appreciated in value faster than others.
A grievance procedure was available to individual taxpayers who chose to challenge their assessments, including the plaintiffs, who sought relief pursuant to that procedure. However, the complaint alleged that grievances were settled in an unscientific manner unrelated to property values.
The discriminatory impact allegedly resulted in shifting more than $1.7 billion in property taxes from approximately the top 61% of properties based upon market value to the remaining 39% of properties, resulting "in [more expensive] properties increasingly shouldering less of a tax burden than properties worth far less" (Tax Equity Now NY LLC v City of New York, 42 NY3d 1, 10). Accordingly, the plaintiffs were "being treated differently from other, similarly-situated property owners, and . . . no rational basis exists for this allegedly disparate treatment" (Supreme Assoc., LLC v Suozzi, 65 AD3d 1219, 1220; see Matter of Scarsdale Comm. for Fair Assessments v Albanese, 202 AD3d 966, 968).
"[S]elective reassessment of only those properties . . . which were sold during the prior year contravenes statutory and constitutional mandates. In order to achieve uniformity and ensure that each property owner is paying an equitable share of the total tax burden the assessors, at a minimum, were required to review all property on the tax rolls in order to assess the properties at a uniform percentage of their market value" (Matter of Krugman v Board of Assessors of Vil. of Atl. Beach, 141 AD2d 175, 183). In this case, it is alleged that moratoriums on reassessment have had a disparate effect on properties with nonwhite owners in areas with less expensive residential homes, because more expensive residential homes appreciate at a faster rate. As was noted in Coleman v Seldin (181 Misc 2d 219, 240 [Sup Ct, Nassau County]), "[n]o assessment system can be equitable if, as plaintiffs allege, the community variations are substantial and the redress is confined to certiorari proceedings which . . . are voluntary . . . [and] must be commenced by individual taxpayers."
The complaint alleges that these discriminatory practices violated the federal Fair Housing Act (see 42 USC §§ 3604[b]; 3605, 3617), the Equal Protection and Due Process Clauses of the United States Constitution, the state law requiring that "[a]ll real property in each assessing unit shall be assessed at a uniform percentage of value" (RPTL 305[2]), 42 USC § 1981, prohibiting discriminatory taxation, Nassau County Charter § 603, which requires "an equitable and scientific system of assessing property," and 42 USC § 2000d, prohibiting discrimination in federally assisted programs. The plaintiffs seek declaratory and injunctive relief and damages to be determined at a jury trial.
2. Standing
"'Standing is . . . a threshold requirement for a plaintiff [or petitioner] seeking to challenge governmental action'" (Matter of County of Orange v City of New York, 232 AD3d 785, 786, quoting New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207, 211). "Generally, if the issue of standing is raised, a party challenging governmental action must meet the threshold burden of establishing that it has suffered an injury in fact and that the injury it asserts fall[s] within the zone of interests or concerns sought to be promoted or protected by the statutory provision under which the [government] has acted" (Matter of McCrory v Village of Mamaroneck Bd. of Trustees, 181 AD3d 67, 71 [internal quotation marks omitted]; see Matter of Law Offs. of Cory H. Morris v Suffolk County, 221 AD3d 900, 901; Matter of Festa v Town of Oyster Bay, 210 AD3d 678, 679). "The injury-in-fact requirement necessitates a showing that the party has an actual legal stake in the matter being adjudicated and has suffered a cognizable harm that is not tenuous, ephemeral, or conjectural, but is sufficiently concrete and particularized to warrant judicial intervention" (Matter of McCrory v Village of Mamaroneck Bd. of Trustees, 181 AD3d at 71 [citation and internal quotation marks omitted]).
"While CPLR 3211(a)(3) speaks to the plaintiff's lack of 'capacity' as a basis for dismissing complaints, decisional authorities have addressed a party's lack of standing as within the scope of the same statutory subdivision. Where a defendant seeks dismissal pursuant to CPLR 3211(a)(3) based on lack of standing, the burden is on the moving defendant to establish, prima [*3]facie, the plaintiff's lack of standing. To defeat a defendant's motion to dismiss, the plaintiff has no burden of establishing its standing as a matter of law, but must merely raise a question of fact as to the issue" (Agudas Chasidei Chabad of United States v Simpson, 239 AD3d 796, 799 [citations and internal quotation marks omitted]).
Here, contrary to the determination of the Supreme Court, the allegations in the complaint, if true, do establish standing, including that the plaintiffs suffered an injury-in-fact (see Matter of McCrory v Village of Mamaroneck Bd. of Trustees, 181 AD3d at 71). The plaintiffs "allege[d] that publicly-criticized systemic inequities have resulted in [more expensive] properties increasingly shouldering less of a tax burden than properties worth far less" (Tax Equity Now NY LLC v City of New York, 42 NY3d at 10) and alleged that they were "being treated differently from other, similarly-situated property owners, and that no rational basis exists for this allegedly disparate treatment" (Supreme Assoc., LLC v Suozzi, 65 AD3d at 1220; see Matter of Scarsdale Comm. for Fair Assessments v Albanese, 202 AD3d at 968).
The Supreme Court, in concluding that the "complaint on its face is insufficient to allege standing," noted that "[n]othing is said of their property values, tax burden, over or under payment, or whether they have utilized the grievance procedure and to what result." The court concluded that there was no allegation "of negative impact of the property tax assessment system on the individual Plaintiffs," and therefore, "the court cannot simply presume that they personally have suffered an injury." However, it is undisputed that the plaintiffs are homeowners in predominantly nonwhite census tract communities in the County.
RPTL 729(4) defines unequal assessment as:
"(a) an entry on an assessment roll of the assessed valuation of real property improved by a one, two or three family residential structure which is made at a higher proportion of full value than assessed valuation of other residential real property on the same roll; or
"(b) an entry on an assessment roll of the assessed valuation of real property which is made at a higher proportion of full value than the assessed valuation of all real property on the same roll."
The general rule is that "[t]o make such a showing, the homeowner must first prove the full market value of his or her own property, which may be established by such methods as proof of a recent purchase price for the property, a professional appraisal, or proof of the sales prices or appraised values of comparable properties" (Matter of Silverman v Town of Huntington, 160 AD3d 752, 753).
However, these plaintiffs, unlike the petitioner in Matter of Silverman v Town of Huntington (160 AD3d 752), are not challenging a single tax assessment as applied to each plaintiff's own home, but are instead challenging the legality of the County's tax assessment scheme. That challenge will require a comparison with the assessments and market values of other properties allegedly granted favorable treatment by the tax scheme.
Further, where challenges to assessments are "based upon the method employed in the assessment of several properties rather than the overvaluation or undervaluation of specific properties, a taxpayer may forego the statutory certiorari procedure and mount a collateral attack on the taxing authority's action" through a declaratory judgment action (Matter of Board of Mgrs. of Greens of N. Hills Condominium v Board of Assessors of County of Nassau, 202 AD2d 417, 419; see Tricarico v County of Nassau, 120 AD3d 658, 660). "A collateral attack may . . . be mounted where the challenge is based upon the method employed in the assessment involving several properties rather than the overvaluation or undervaluation of specific properties" (Tricarico v County of Nassau, 120 AD3d at 660 [internal quotation marks omitted]; see Matter of Krugman v Board of Assessors of Vil. of Atl. Beach, 141 AD2d at 180), which is the case here.
The plaintiffs have alleged more than a "statistical probabilit[y]" of harm; rather, they have alleged "a factual showing of perceptible harm" (Summers v Earth Island Instiitute, 555 US 488, 498-499 [internal quotation marks omitted]). "Nor is there any requirement that the harm necessary to confer standing be actual and in the present rather than potential and in the future as long as it is reasonably certain that the harm will occur if the challenged action is permitted to continue" (Police Benevolent Assn. of N.Y. State Troopers, Inc. v Division of N.Y. State Police, 29 AD3d 68, 70). Here, the allegations indicate that the harm will be exacerbated if the challenged [*4]action is permitted to continue.
Moreover, it is undisputed that the plaintiffs are property owners and, thus, directly bear the costs of the property tax burden placed on their properties. Their burden is not speculative (compare Matter of K-Mart Corp. v Board of Assessors of County of Tompkins, 176 AD2d 1034, with Robinson v City of New York, 143 AD3d 641). Their allegations that they paid a disproportionate share of property taxes pursuant to an illegally imposed assessment system are sufficient to establish standing (see Matter of Feldman v Assessor of Town of Bedford, 236 AD2d 399, 399).
Further, the plaintiffs have standing to demand monetary damages. The recovery of monetary damages requires the participation of individual homeowners, who ultimately would be required to prove the market value of their individual homes to determine whether they overpaid taxes (see Matter of Scarsdale Comm. for Fair Assessments v Albanese, 202 AD3d at 968). The plaintiffs, as individual homeowners who are parties to the action, will be able to seek such remedies. Accordingly, the Supreme Court erred in granting the defendants' motion to dismiss the complaint.
3. Transfer of Venue
In light of our determination, the plaintiffs' cross-motion to transfer venue from Nassau County to Queens County is no longer academic. "[S]ince the parties litigated the merits of that motion in the Supreme Court and fully briefed those issues on appeal, we will consider the merits of that motion in the interest of judicial economy rather than remitting the matter to the Supreme Court for it to do so" (Deutsche Bank Natl. Trust Co. v Medford, 234 AD3d 669, 671; see L & D Serv. Sta., Inc. v Utica First Ins. Co., 127 AD3d 929, 931; Gesuale v Campanelli & Assoc., 126 AD3d 936; Board of Directors of House Beautiful at Woodbury Homeowners Assn., Inc. v Godt, 96 AD3d 983).
On this point, 81.7% of housing units in Nassau County are owner-occupied, which plaintiffs contend constitutes a "reason to believe that an impartial trial cannot be had" (CPLR 510[2]; see Bath Iron Works Corp. v Certain Member Cos. of the Inst. of London Underwriters, 1995 Me Super LEXIS 411 [No. CV-94-57 (DHM)] [change of venue warranted when over 40% of jury pool may have an interest in the well-being of the plaintiff]). The defendants presented no evidence to the contrary. On appeal they argue that "a large majority [of Nassau County residents] is not everyone, and . . . interested parties could be winnowed out in jury selection," presumably to yield a jury of renters, who nevertheless could have family members who were homeowners, or whose rent is affected by real estate taxes.
Given the high percentage of home ownership amongst the jury pool in Nassau County and the fact that this case could affect real estate tax assessments countywide, many prospective jurors would have an actual or at least perceived pecuniary interest in the outcome of this case, which warrants moving the trial to another county (see Long Is. Light. Co., v New England Petroleum Corp., 80 Misc 2d 183 [Sup Ct, Queens County]), as "there is reason to believe that an impartial trial cannot be had" (CPLR 510[2]; see Althiser v Richmondville Creamery Co., 13 AD2d 162). Potential jurors may perceive that even if their current real estate tax assessments would not be affected, their future tax assessments could be affected. "Nothing can obscure the fact that the cost of living is a major, if not a paramount, contemporary public issue" and real estate taxes "are so intimately connected with the cost" of housing, which is intimately connected with the cost of living (Long Is. Light. Co. v New England Petroleum Corp., 80 Misc 2d at 187, 188). Such presents a "sufficient risk of a possible subliminal bias that requires the matter to be transferred from Nassau County" (id. at 188).
4. Conclusion
Accordingly, the order is reversed, on the law and as a matter of discretion, the defendants' motion pursuant to CPLR 3211(a) to dismiss the complaint is denied, the plaintiffs' cross-motion pursuant to CPLR 510(2) to transfer venue from Nassau County to Queens County is granted, and the Clerk of the Supreme Court, Nassau County, is directed to deliver to the Clerk of the Supreme Court, Queens County, all papers filed in this action and certified copies of all minutes and entries (see CPLR 511[d]).
WARHIT, WAN and HOM, JJ., concur.
ORDERED that the order is reversed, on the law and as a matter of discretion, with costs, the defendants' motion pursuant to CPLR 3211(a) to dismiss the complaint is denied, the plaintiffs' cross-motion pursuant to CPLR 510(2) to transfer venue from Nassau County to Queens [*5]County is granted, and the Clerk of the Supreme Court, Nassau County, is directed to deliver to the Clerk of the Supreme Court, Queens County, all papers filed in this action and certified copies of all minutes and entries (see CPLR 511[d]).
ENTER:
Darrell M. Joseph
Clerk of the Court